# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| STEVEN RENE MUNOZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-18-CV-00221-LS |
| | § | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Rene Munoz appeals the denial of his application for disability insurance benefits under 42 U.S.C. § 405(g). The parties consent to my determination of the case under 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas. I **AFFIRM** the Commissioner's decision denying Munoz's application.

### I.  Facts and Proceedings

Munoz alleges he became disabled on June 8, 2016[2] because of post traumatic stress disorder ("PTSD"), depression, back injury, and sleep apnea.[3] An Administrative Law Judge ("ALJ") held a hearing on February 1, 2018 and heard testimony from Munoz, who was represented by counsel, and a vocational expert.[4] In an opinion dated February 21, 2018, the ALJ determined that Munoz was not disabled within the meaning of the Social Security Act.[5] The Appeals Council denied his request for review on June 7, 2018, making the decision of the ALJ

---

[1] Andrew Saul was sworn in as the Commissioner of the Social Security Administration on June 17, 2019.
[2] R:168.
[3] R:220.
[4] R:39-73.
[5] R:16-32.

the final decision of the Commissioner.[6] Munoz argues in this appeal that the ALJ erroneously underrated the severity of his mental impairments and failed to give sufficient credence to his treating medical providers.

## II.     Discussion

### A.     Legal Standards

Judicial review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standards.[7] Substantial evidence "is more than a mere scintilla, and less than a preponderance."[8] The Commissioner's findings will be upheld if supported by substantial evidence.[9] In evaluating a disability claim, the Commissioner must follow a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant can perform other relevant work.[10]

Courts utilize four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's

---

[6] R:1-3.
[7] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).
[8] *Masterson*, 309 F.3d at 272 (citations omitted).
[9] *Id*.
[10] 20 C.F.R. § 404.1520; *Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001).

age, education, and work history.[11] A court cannot, however, reweigh the evidence or try the issues *de novo*.[12] The Commissioner, not the courts, must resolve conflicts in the evidence.[13]

    **B.**    **Residual Functional Capacity**

Residual functional capacity, or RFC, is the most an individual can still do despite his or her limitations.[14] The responsibility to determine a claimant's RFC belongs to the ALJ.[15] The ALJ must consider a claimant's abilities despite his or her physical and mental limitations based on the relevant evidence in the record.[16] The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms.[17] An RFC finding is used to determine if the claimant can still do his past jobs.[18] If unable, the RFC is then used to determine whether he can do other jobs in the national economy.[19]

    **C.**    **The ALJ's Findings**

In this case, the ALJ found that Munoz had severe impairments that included lumbar spine degenerative disc disease, obesity, major depressive disorder, and PTSD.[20] None, however, were severe enough to meet or equal an impairment listed in the appendix to the regulations.[21] The ALJ found that Munoz could still perform work requiring "light exertion,"[22] with certain

---

[11] *Perez*, 415 F.3d at 462.
[12] *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[13] *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).
[14] 20 C.F.R. § 404.1545.
[15] *Id.* at § 404.1546; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[16] *Perez*, 415 F.3d at 461-62.
[17] *See* 20 C.F.R. §§ 404.1529, 404.1545.
[18] *Perez*, 415 F.3d at 462.
[19] *Id.*
[20] R:18.
[21] R:19.
[22] R:21-22. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

3

limitations. The ALJ determined that even with these limitations there are jobs in the national economy that Munoz can do.[23] Accordingly, the ALJ found Munoz not disabled and not entitled to disability insurance benefits.[24]

### D. Presumptive disability based on PTSD.

Munoz first argues that his PTSD is so severe he should have been deemed disabled at step three[25] of the sequential disability analysis. The severity of "mental disorders" is measured using medical criteria ("paragraph A"),[26] functional criteria ("paragraph B"),[27] and an analysis of "serious and persistent mental disorders" ("paragraph C").[28] Munoz's PTSD falls within Listing 12.15[29] and thus would be severe enough if it satisfied the requirements of both paragraphs A and B, or A and C.[30] Munoz does not challenge the ALJ's finding that his mental impairments fails to satisfy the paragraph C criteria,[31] and the ALJ seems to have found in Munoz's favor with respect to the paragraph A criteria. At issue, then, is the ALJ's finding that "the 'paragraph B' criteria were not satisfied."[32]

A claimant's mental disorder satisfies paragraph B when it results in one "extreme" or two "marked" limitations in the following "areas of mental functioning…in a work setting": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) and adapting or managing oneself.[33] A "marked limitation" means that a claimant is seriously limited in his ability to independently, appropriately, and

---

[23] R:31.
[24] R:32.
[25] 20 C.F.R. § 404.1520(a)(4)(iii).
[26] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(a).
[27] *Id*. at § 12.00(A)(2)(b).
[28] *Id*. at § 12.00(A)(2)(c).
[29] *Id*. at § 12.00(B)(11).
[30] *See id*. at § 12.00(A)(2).
[31] R:21 ("In this case, the evidence fails to establish the presence of the 'paragraph C' criteria.").
[32] *Id*.
[33] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

effectively function in the area at issue on a sustained basis.[34] An "extreme limitation" means that a claimant has no ability to so function on a sustained basis.[35]

The ALJ found that the paragraph B criteria were not satisfied because Munoz had only a "mild" limitation with respect to "adapting or managing oneself," and only "moderate" limitations with respect to the other three areas of mental functioning.[36] The ALJ analyzed and discussed each of the four paragraph B areas of mental functioning in depth, and cited to particular entries in the record that bely anything more severe than the mild and moderate limitations the ALJ found.[37] I reviewed the records on which the ALJ relied and find substantial evidence to support his determinations about Munoz's limitations.

Munoz argues broadly and without explanation that his "persistent symptoms related to PTSD"[38] and the "overwhelming abnormal references in the medical records and the medical opinions regarding functional restrictions"[39] meet the paragraph B criteria. Although he cites to numerous medical records, he fails to explain any of them, fails to tie any particular medical record or opinion to one of the mental functioning areas of paragraph B, and fails to explain how the ALJ's findings that Munoz has only "mild" or "moderate" limitations are erroneous.

Munoz must prove not only that he is disabled, but that he became disabled before the date his insured status expired,[40] which in this case was December 31, 2016.[41] Munoz bases this appeal, however, almost entirely on medical records after this date.[42] The one exception is a

---

[34] *Id*. at § 12.00(F)(2)(d).
[35] *Id*. at § 12.00(F)(2)(e).
[36] R:20-21.
[37] *Id*.
[38] ECF No. 17, at 4.
[39] *Id*. at 5.
[40] *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).
[41] R:18.
[42] See R:1224 (March 2017); 1720-21 (September 2017); 1831-33 (January 2018); 656-62 (March 2017); 663-64 (March 2017); 667 (March 2017); 670 (March 2017); 1161-62 (March 2017); 1224-25 (March

medical progress note from February 2016[43] when Munoz was still working as a teacher[44] and before the June 2016 disability onset date. To the extent that Munoz relies almost exclusively on records outside of the applicable time period to challenge the ALJ's conclusions about the paragraph B criteria, such challenge fails, and the ALJ's determination that Munoz was not presumptively disabled at step three was not error.

**E. Giving insufficient weight to a treating physician's opinion.**

Finally, Munoz argues that "[t]he ALJ fail[ed] to give Plaintiff's treating physician's opinion the proper weight."[45] Ordinarily the opinion of a treating physician who is familiar with the claimant's conditions should be accorded great weight in determining disability.[46] However, good cause may permit an ALJ to discount the weight of a treating physician when the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[47]

Consulting psychologist Peter Fernandez examined Munoz once in July 2017. He opined in a single sentence that Munoz's "psychological ailments—in concert with his reported physical ailments—are likely to impede his competitive employment."[48] The ALJ gave this opinion little weight because it was based on observations derived more than a year after the date Munoz was last insured.[49] Similarly, counselor Jeanette James met with Munoz even later, in September 2017,[50] and a close reading of the record reflects that the James "opinion" on which Munoz relies

---

2017); 1228 (March 2017); 1565 (December 2017); 1569-70 (November 2017); 1720-26 (September 2017); 1728-29 (December 2017); 1829-1834 (January 2018).
[43] R:560.
[44] R:239.
[45] ECF No. 17, at 6.
[46] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).
[47] *Id.* at 456.
[48] R:1089.
[49] R:29.
[50] R:1727.

in his brief[51] is actually a "Statement" about Munoz's "Problems/Needs on File,"[52] not a medical opinion from James.

Finally, Munoz relies on counselor Maria Acosta's January 2018 records which were generated more than a year after Munoz was last insured.[53] Acosta opined in January 2018 that Munoz's impairments would cause him to miss more than four days per week per month.[54] The ALJ explained he gave no weight to these late records and opinions because they "considerably exceed the type and degree of abnormal findings noted by other examiners during the time period at issue who simply do not note findings consistent with a lack of ability to sustain attendance at unskilled work or an inability to work with others."[55] For example, VA psychiatric records from July 2016 reflect that Munoz was feeling better because he was healing very well from back surgery, and "want[ed] to apply for employability…go back to school to get his PhD...and volunteer as a wrestling coach."[56] During a follow-up VA appointment in November 2016 Munoz reported that he was staying busy with his children, had better sleep and energy because he started using a C-pap machine, and was noted to have "less depressed" affect and mood.[57] The ALJ found that these records show that in November 2016 Munoz "experienced only moderate severity symptoms and limitations attendant to his depression and PTSD,"[58] instead of the more severe limitations Acosta diagnosed in January 2018. I find no error in the weight the ALJ gave to post-December 2016 opinions about Munoz's limitations.

The ALJ properly considered all of the medical evidence in this case, and substantial

---

[51] ECF No. 17, at 9.
[52] R:1723, 1729.
[53] R:1829-34.
[54] R:1834.
[55] R:28.
[56] R:970.
[57] R:957.
[58] R:27.

7

evidence supports his decision. I find no legal error, and the decision of the Commissioner is **AFFIRMED**.

      **SIGNED** and **ENTERED** February 10, 2020.

                                        **LEON SCHYDLOWER**
                                        **UNITED STATES MAGISTRATE JUDGE**